IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TONYA LOONEY, JR<br>5632 Rodman St,<br>Philadelphia, PA 19143<br><br>                    Plaintiff,<br><br>          v.<br><br>CITY OF PHILADELPHIA<br>1234 Market Street,<br>Philadelphia, PA 19107<br><br>                    Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO. _____<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT – CIVIL ACTION

Plaintiff, Tonya Looney ("Plaintiff"), by and through her undersigned attorney, for her Complaint against The City of Philadelphia ("Defendant"), alleges as follows: Plaintiff brings this Complaint contending that Defendant violated her rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e), *et seq*., the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"), and the Philadelphia Fair Practices Ordinance ("PFPO"), Phila. Code §§ 9-1101 to 9-1129, and retaliated against Plaintiff for attempting to exercise her rights under the same. As a result, Plaintiff has suffered damages as set forth herein.

## PARTIES

1. Plaintiff is an adult American citizen residing at 5632 Rodman Avenue, Philadelphia, PA 19143.

2. Upon information and belief, Defendant City of Philadelphia maintains an office located at 1234 Market Street, Philadelphia, PA 19107.

## JURISDICTION AND VENUE

3. Paragraphs 1 through 2 are hereby incorporated by reference as though the same were fully set forth at length herein.

4. On or about February 13, 2020, Plaintiff filed a Complaint with the Equal Opportunity Employment Commission ("EEOC"), which was dual filed with the Philadelphia Commission on Human Relations ("PCHR") thereby satisfying the requirements of 42 U.S.C. §§ 12117(a); 2000e-5(b) and (e). Plaintiff's Complaint was docketed as EEOC Charge number 530-2020-00330. Plaintiff's Complaint was filed within three-hundred (300) days of the unlawful employment practice, i.e. discrimination on account of a disability.

5. By correspondence dated November 19, 2021, Plaintiff received a Notice of Rights to Sue from the EEOC regarding her Charge of Discrimination, advising her that she had ninety (90) days to file suit against Defendant.

6. Plaintiff filed the instant matter within the relevant statutory timeline.

7. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

9. This Court has supplemental jurisdiction over Plaintiff's state law claims because those claims arise out of the same nucleus of operative fact as the federal claims.

10. The venue in this District is proper pursuant to 28 U.S.C. § 1391, inasmuch as the Defendant is located in this district and the events giving rise to this action occurred in this District.

## FACTS

11. Paragraphs 1 through 10 are hereby incorporated by reference as though the same were fully set forth at length herein.

12. On or about October 11, 2016, Defendant hired Plaintiff in the position of IT Supervisor.

13. At all times material hereto, Plaintiff received positive reviews of her performance, occasional promotions, and no justifiable discipline.

14. Upon her hire, Plaintiff's immediate supervisor was Operations Manager Idris Abdul-Zahir (hereinafter, "Mr. Abdul-Zahir").

15. Plaintiff reported to Mr. Abdul-Zahir, Mr. Abdul-Zahir assigned Plaintiff tasks, and Mr. Abdul-Zahir created Plaintiff's annual performance reports.

16. Shortly after Plaintiff began working for Defendant, IT technicians Kathy Feigherty ("Ms. Feigherty") and Naomi (Last Name Unknown) ("Naomi LNU") warned Plaintiff about Mr. Abdul-Zahir's sex-based discriminatory conduct toward women. Specifically, Naomi LNU told Plaintiff, "I'm surprised that you were hired here, Idris doesn't like working with women; he fired two women recently to bring in some male techs of his choosing, which is why he brought in Mohammad and Shawn."

17. Further, Mya Chiancone (now Mya Jeffries, hereinafter "Ms. Jeffries") told Plaintiff that before Plaintiff was hired, multiple women in the workplace alleged that they were the victims of sexual harassment at the hands of Mr. Abdul-Zahir, and Defendant was forced to conduct an investigation into these claims.

18. As Plaintiff began working and throughout her tenure with Defendant, Mr. Abdul-Zahir repeatedly subjected Plaintiff to differential treatment based on her sex.

19. Specifically, Mr. Abdul-Zahir would often tell Plaintiff "You know how I feel about women. Being Muslim, my role as a man and a supervisor is to protect you and have you follow my lead. Can I count on you to be loyal to me?"

20. Within a few months of her hire, Mr. Abdul-Zahir approached Plaintiff when she was alone. Mr. Abdul-Zahir communicated to Plaintiff that he was having marital issues with his wife, asked Plaintiff about her recent divorce, and if she was currently single.

21. Plaintiff responded by telling Mr. Abdul-Zahir that she had to resume work and excusing herself from the conversation.

22. At one point, Plaintiff began dating a coworker who also worked for the city. Upon becoming aware of this information, Mr. Abdul-Zahir immediately and repeatedly asked Plaintiff about this relationship.

23. In or about 2017, Plaintiff and Director Beth Jurman ("Ms. Jurman") implemented a 2-year plan to increase salaries of staff that had never received raises under Mr. Abdul-Zahir's Management. Notably, Mr. Abdul Zahir received several raises during the same time frame in which his staff's salary remained unchanged.

24. Plaintiff suffers from Adenomyosis and Anemia, disabilities within the meaning of the ADA in that they substantially limit one or more major life activities.

25. Plaintiff's disabilities substantially limit Plaintiff's ability to concentrate, stay awake, sit, work, and breathe.

26. These conditions subject Plaintiff to abnormal bleeding; Plaintiff often bleeds through her clothes, and she brought extra sets of clothes to work with Defendant regularly.

27. In or about October of 2017, Plaintiff informed Defendant about these disabilities because Plaintiff required leave in order to have a surgery related her Adenomyosis.

28. In October of 2017, Dr. Samantha Butt of University of Penn Medicine performed a laparoscopy surgery on Plaintiff for the purpose of remedying or treating Plaintiff's Adenomyosis. Plaintiff took a leave of absence in connection with this surgery.

29. This leave was approved under the FMLA, both intermittent and continuous, and constituted a reasonable accommodation in that it allowed Plaintiff to perform the essential functions of her position and did not cause Defendant any undue hardship.

30. After her surgery, Plaintiff returned to work and was given additional job tasks and responsibilities, and began working in the position of "Interim Manager;" however Plaintiff was never provided the additional compensation that Ms. Jurman promised came with this position.

31. Plaintiff repeatedly spoke with her supervisor Ms. Jurman about her disabilities and brought Ms. Jurman doctor's notes regarding absences related to her disabilities.

32. Although Ms. Jurman would approve leave and allow Plaintiff to work from home when Plaintiff's conditions worsened from time to time, Ms. Jurman retaliated against Plaintiff for doing so.

33. In a performance evaluation subsequent and/or consecutive to Plaintiff's leave in connection with her disabilities, negative comments were made about Plaintiff's attendance affecting her performance.

34. Plaintiff disputed and complained about these comments to her superiors, specifically Sandra Carter (CIO of Revenue) ("Ms. Carter"), and Michelle Bethel (Deputy Commissioner of Water) ("Ms. Bethel").

35. Specifically, Ms. Carter told Plaintiff "Your attendance should not have been mentioned in any of your performance evaluations."

36. Upon information and belief, Defendant prejudicially believed Plaintiff would require additional medical leave in the future.

37. In or about early 2018, Plaintiff was made Acting IT Manager of Operations.

38. Unable to cope with the idea or reality of Plaintiff in a role outside of his jurisdiction, Mr. Abdul-Zahir protested this advancement, promotion, and even Plaintiff's relocation to a new office, stating that Plaintiff was not "ready" or "loyal."

39. Mr. Abdul-Zahir often made negative or condescending comments about other female employees in positions of power in Defendant's workplace. Specifically, he complained about Ms. Jurman, Ms. Jeffries, and Sherrie Cain ("Ms. Cain").

40. Plaintiff reported all of Mr. Abdul-Zahir's sex-based mistreatment to Ms. Jurman as well as to Chief Information Officer Sandra Carter, Deputy Commissioner of Water Michelle Bethel ("Ms. Bethel"), and the Human Resources Department, including a report from on or about October of 2018.

41. Upon information and belief, Defendants received these reports, both oral and written.

42. Upon information and belief, Defendant is still in possession of the written report regarding Mr. Abdul-Zahir's sex-based mistreatment.

43. In response to Plaintiff's complaints about Mr. Abdul-Zahir, Ms. Jurman communicated to me that, "He [Mr. Abdul-Zahir] has a problem with women in leadership."

44. Ms. Jurman then suggested that Plaintiff not pursue the matter any further.

45. No action was taken by Defendant to address or correct Mr. Abdul-Zahir's behavior.

46. Plaintiff was denied a promotion in July 2018 despite previous assurances by Ms. Jurman that she would be promoted.

47. Upon information and belief, and based on his continued protests of Plaintiff's advancement, Mr. Abdul-Zahir's influence was a large factor in Plaintiff's aforementioned promotion denial.

48. On or about April 19, 2019, Defendant terminated Plaintiff's employment based on false anonymous accusations reported to the Inspector General's office that Plaintiff violated the residency requirement and committed time fraud, despite Plaintiff providing clear proof of her residency in Philadelphia and working remotely.

49. Upon information and belief, Mr. Abdul-Zahir was the individual who made the aforementioned anonymous tip regarding Plaintiff's residency.

50. Plaintiff had, in fact, both worked remotely with leave, and taken Family and Medical Leave Act Leave in the months prior to Plaintiff's termination.

51. Given the aforementioned circumstances and timing, Plaintiff believes and thus avers that Defendant terminated her employment because of her complaints regarding the sex-based mistreatment she was subjected to in violation of Title VII and the PFPO, and/or the actual and/or perceived disabilities, such disabilities Defendant regarded her as having, for her past record of impairment, and in retaliation for requesting an accommodation as well as her complaints in connection thereto in violation of the ADA and the PFPO.

52. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, earnings and earnings potential, loss of potential bonuses, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to her reputation.

**COUNT I**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. § 2000e** *et seq.*

## DISCRIMINATION AND RETALIATION (SEX)

53. Paragraphs 1 through 52 are hereby incorporated by reference as though the same were fully set forth at length herein.

54. Defendant employed at least fifteen (15) employees throughout its various office locations at all times material hereto.

55. Defendant discriminated against Plaintiff and subjected her to differential treatment on the basis of her gender/sex (female).

56. Plaintiff made good faith complaints of sex/gender discrimination and/or differential treatment on the basis sex/gender to Defendant's Management Directors and Defendant's Human Resources Department. Defendant failed to take appropriate remedial action in connection thereto.

57. Defendant took affirmative discriminatory action against Plaintiff on the basis of her gender/sex (female) and in retaliation for her complaints in connection thereto, by terminating Plaintiff from employment and failing to offer her any alternate positions, in violation of Title VII.

58. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

59. Because of Defendant's unlawful acts, Plaintiff has suffered damages in the form of, *inter alia*, loss of past and future wages and compensation, mental and emotional damages, loss of reputation, personal humiliation, and loss of life's enjoyment.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A.  Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00):

B.  Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton and/or malicious conduct;

C.  Plaintiff's costs, disbursements and attorneys' fees incurred in prosecuting this action;

D.  Pre-judgment interest in an appropriate amount; and

E.  Such other and further relief as is just and equitable under the circumstances.

F.  Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## COUNT II
## PHILADLEPHIA FAIR PRACTICES ORDINANCE
## § 9-1100, et seq.
## DISCRIMINATION AND RETALIATION (SEX)

60. Paragraphs 1 through 59 are hereby incorporated by reference as if the same were more fully set forth at length herein.

61. At all times relevant hereto, Plaintiff was an employee within the meaning of the Philadelphia Fair Practice Ordinance Code, § 9-1100, *et seq* ("PFPO").

62. At all times relevant hereto, Defendant had at least one (1) employee.

63. Plaintiff is a qualified individual with a disability within the meaning of the PFPO.

64. Defendant discriminated against Plaintiff and subjected her to differential treatment on the basis of her sex/gender (female).

65. Plaintiff made good faith complaints of sex/gender discrimination and/or differential treatment on the basis sex/gender to Defendant's Management Directors and Defendant's Human Resources Department. Defendant failed to take appropriate remedial action in connection thereto.

66. Defendant took affirmative discriminatory action against Plaintiff on the basis of her sex/gender and in retaliation for her complaints in connection thereto, by terminating Plaintiff from employment and failing to offer her any alternate positions, in violation of the PFPO.

67. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

68. By reason of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the PFPO by terminating Plaintiff on account of her sex/gender and/or in retaliation for complaints in connection thereto.

69. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, earnings potential, raises, and other significant economic benefits, along with emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE,** as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B.  Compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C.  Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

D.  Pre-judgment interest in an appropriate amount;

E.  Such other and further relief as is just and equitable under the circumstances; and

F.  Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law.

## COUNT III
## AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12101, et seq.
## DISCRIMINATION AND RETALIATION

70. Paragraphs 1 through 69 are hereby incorporated by reference as though the same were fully set forth at length herein.

71. At all times relevant hereto, Plaintiff was an employee within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

72. At all times relevant hereto, Defendant had at least fifteen (15) employees.

73. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

74. As described above, Plaintiff's conditions are physical impairments that substantially limited Plaintiff in one or more major life activities, including concentrating, staying awake, sitting, working, and breathing.

75. Defendant was aware of Plaintiff's disabilities.

76. Plaintiff requested a reasonable accommodation in connection to her disabilities.

77. Defendant failed to accommodate Plaintiff's reasonable requests for her disabilities.

78. Upon information and belief, Defendant retaliated against Plaintiff for her requests for reasonable accommodations in connection to her disabilities.

79. By reason of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by terminating Plaintiff on account of her disabilities, and in retaliation for Plaintiff's requests for reasonable accommodations in connection to her disabilities.

80. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, earnings potential, raises, and other significant economic benefits, along with emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE,** as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C. Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

D. Pre-judgment interest in an appropriate amount;

E. Such other and further relief as is just and equitable under the circumstances; and

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law.

### COUNT IV
### PHILADLEPHIA FAIR PRACTICES ORDINANCE
### § 9-1100, et seq.
### DISCRIMINATION AND RETALIATION (DISABILITY)

81.     Paragraphs 1 through 80 are hereby incorporated by reference as if the same were more fully set forth at length herein.

82.     At all times relevant hereto, Plaintiff was an employee within the meaning of the Philadelphia Fair Practice Ordinance Code, § 9-1100, *et seq*.

83.     At all times relevant hereto, Defendant had at least one (1) employee.

84.     Plaintiff is a qualified individual with a disability within the meaning of the PFPO.

85.     As described above, Plaintiff's conditions are physical impairments that substantially limited Plaintiff in one or more major life activities, including concentrating, staying awake, sitting, working, and breathing.

86.     Defendant was aware of Plaintiff's disabilities.

87.     Plaintiff requested a reasonable accommodation in connection to her disabilities.

88.     Defendant failed to accommodate Plaintiff's reasonable requests for her disabilities.

89.     Upon information and belief, Defendant retaliated against Plaintiff for her requests for reasonable accommodations in connection to her disabilities.

90.     By reason of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the PFPO by terminating Plaintiff on account of her disabilities and/or in retaliation for requesting an accommodation in connection to her disability.

91. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, earnings potential, raises, and other significant economic benefits, along with emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE,** as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

G. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

H. Compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

I. Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

J. Pre-judgment interest in an appropriate amount;

K. Such other and further relief as is just and equitable under the circumstances; and Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

                                    **MURPHY LAW GROUP, LLC**

                            By: *s/ Brendan Mehler, Esq.*
                                Brendan Mehler, Esq.
                                Michael Murphy, Esq.
                                Eight Penn Center, Suite 2000
                                1628 John F. Kennedy Blvd.
                                Philadelphia, PA 19103
                                TEL: 267-273-1054
                                FAX: 215-525-0210
                                bmehler@phillyemploymentlawyer.com
                                murphy@phillyemploymentlawyer.com
                                *Attorneys for Plaintiff*

Dated: February 16, 2022

## **DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.